# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOCELYN ISADA BOLANTE,
        Petitioner,

    v.                                                                        Case No. 06C0907

DEBORAH ACHIM, et al.,
        Respondents.

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 2241, petitioner Jocelyn Isada Bolante, a Philippine national who is presently confined in the Kenosha County jail, seeks a writ of habeas corpus or, alternatively, release on bond. Petitioner alleges that the United States ("the government") is detaining him without due process of law while seeking to remove him from the country. The government alleges that petitioner is removable under INA § 212(a)(7)(A)(i)(I)[1] because he does not possess "a valid immigrant visa." Petitioner is currently contesting removal in a proceeding before an immigration judge ("IJ") in Chicago.

## I. BACKGROUND

Petitioner served as Undersecretary of Agriculture under current Philippine President Gloria Macapogal-Arroyo. Recently, the Philippine Senate summoned petitioner to answer questions about an alleged scheme to funnel money to Arroyo's political allies. Petitioner contends that the inquiry is politically motivated and that any allegations against him are unfounded. He did not respond to the summons but rather traveled to Hong Kong

---

[1] I will refer to provisions of the Immigration and Nationality Act ("INA") by section number. The sections are codified at 8 U.S.C. § 1101 et seq.

and then to the United States. He arrived in Los Angeles on July 7, 2006, where officers of the Department of Homeland Security ("DHS")[2] detained him and have since declined to release him on bond.

Petitioner states that when he traveled to the United States, he believed he had a valid visitor's visa; he has since concluded that the government unlawfully revoked that visa. Upon arrival in Los Angeles, petitioner advised DHS that he intended to remain in the United States for two months to discuss the possibility of establishing a trading business, see his dentist and submit his expense report to Rotary International, of which he was the treasurer. DHS advised petitioner that the Philippine Senate had issued an arrest warrant for him and that as a result, the United States consular office in Manila had revoked his visa.[3] On July 13, 2006, the United States initiated removal proceedings against him.

## II. DISCUSSION

I begin the analysis by discussing the principles of immigration law implicated by petitioner's claim. I note in this regard that modern immigration law is "labyrinthine" in nature – "a maze of hyper-technical statutes and regulations that engender waste, delay and confusion for the Government and petitioners alike." Drax v. Reno, 338 F.3d 98, 99

---

[2]Under current law, the DHS is responsible for enforcing the INA.

[3]Petitioner has submitted a copy of his visa, and it bears no indication of cancellation. However, the government has submitted copies of letters allegedly sent by a consular officer in Manila to petitioner on February 15, 2006 and March 20, 2006 advising him that his visa was no longer valid. The March 20 letter states that "as of today your nonimmigrant visa has been revoked under INA § 214(b)." A nonimmigrant visa is one issued to an alien who intends to remain in the United States indefinitely. INA § 101(a)(15). Petitioner denies receiving either letter. He states that the consul had no reason to believe that he would overstay his visa and no lawful basis for revoking it. He states that his wife remains in the Philippines and that he owns property there. He disputes that the Philippine Senate issued an arrest warrant for him.

2

(2d Cir. 2003); see also Baeta v. Sonchik, 273 F.3d 1261, 1263 (9th Cir. 2001) (stating that "[m]uch judicial attention has been required to untie the various jurisdictional Gordian knots created by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA")").

## A. Applicable Legal Principles

### 1. Revocation of Visas

Generally, an alien who seeks to travel to the United States must apply for a visa at the United States consulate in his home country. Pursuant to INA § 221(a), a State Department consular officer has the exclusive authority to grant or deny an application for a visa. Under the oft-criticized doctrine of consular non-reviewability, her decision is not reviewable – by her superiors in the State Department, by an IJ or by an Article III court. Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, 8 Immigration Law and Procedure § 104.11[2] (Rev. Ed. 2006); see also Licea-Gomez v. Pilliod, 193 F. Supp. 577, 582 (N.D. Ill. 1960) (stating that "a consul's decision to withhold a visa is not reviewable, not even by the Secretary of State") (citations omitted).

A consular officer, the Secretary of State or the Secretary's delegate may revoke a visa. INA § 221(i). The INA does not limit an officer's discretion to revoke a visa, but State Department regulations impose guidelines governing revocation. See 22 C.F.R. § 41.122(a). Further, the State Department has instructed its consuls that they may not revoke a visa "based on a suspected ineligibility, or on derogatory information that is insufficient to support an ineligibility finding," but only after making a finding of ineligibility.

3

State Dep't Cable No. 00-State-245040, par. 3 (undated), reprinted in 5 Bender's Immigr. Bull. 236 (Mar. 1, 2000).

The doctrine of consular non-reviewability does not bar review of a visa revocation. See Gordon, Mailman & Yale-Loehr, supra, § 104.11[2]. At least one circuit has concluded that a court may review the lawfulness of a consular officer's revocation of an arriving alien's visa under § 41.122(a), Wong v. Dep't of State, 789 F.2d 1380, 1385-86 (9th Cir. 1985), though it declined to review the Secretary of State's delegate's revocation of a visa, Noh v. INS, 248 F.3d 938, 940-41 (9th Cir. 2001). However, in 2004, Congress in effect expanded the non-reviewability doctrine by enacting INA § 221(i), which stripped district courts of the authority to review visa revocations except those of lawfully admitted aliens found to be deportable under § 237(a)(1)(B). Because petitioner has not yet been admitted, INA § 237(a)(1)(B) has no application to the present case.

### 2. Removal of Aliens

Prior to recent enactments, the INA differentiated between "exclusion," which applied to aliens not yet admitted to the country, i.e., detained at points of entry or paroled pending exclusion, and "deportation," which applied to admitted aliens. Present law refers only to "removal," INA § 240, although an unadmitted alien is subject to removal because he is "inadmissible" under § 212, while an admitted alien is subject to removal because he is "deportable" under § 237. IJs preside over removal proceedings. Either party in a removal proceeding may appeal an IJ's decision to the Board of Immigration Appeals ("BIA"), and may appeal a BIA decision to a circuit court of appeals. INA § 242.

An IJ determining whether to remove an alien deemed inadmissible under § 212(a)(7)(A)(i)(I) generally asks only whether the alien possessed valid papers on arrival,

although nothing appears to bar an IJ from inquiring into an underlying visa revocation. An Article III court with jurisdiction may also review a revocation underlying a removal proceeding. See Soroa-Gonzales v. Civiletti, 515 F. Supp. 1049, 1060-61 (N.D. Ga. 1981) (reviewing an underlying parole revocation); Application of Paktorovics, 156 F. Supp. 813, 818 (S.D.N.Y. 1957) (stating that "circumstances might arise warranting an independent inquiry by the courts into the sufficiency of the reasons given for [parole] revocation"), rev'd on other grounds, 260 F.2d 610 (2d Cir. 1958); see also United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987) (deciding in the criminal context that due process requires a court to allow a defendant charged with returning to the United States after deportation to attack the legality of his deportation).

### 3.     Federal Court Jurisdiction to Review DHS Immigration Decisions

In recent years, Congress has dramatically reduced the jurisdiction of federal courts to review DHS decisions regarding immigration.[4] In IIRIRA, Congress eliminated the jurisdiction of district courts to review most such decisions, permitting review only via the IJ, BIA, circuit court route. Reno v. Am.-Arab Anti-Discrim. Comm., 525 U.S. 471, 481-83 (1999). Congress actually eliminated all jurisdiction to review some types of decisions, but to avoid a suspension clause question, the Supreme Court interpreted such language as not affecting habeas review.[5] INS v. St. Cyr, 533 U.S. 289, 300-10 (2001), superseded by

---

[4]Many commentators have criticized Congress's jurisdiction-stripping actions. See, e.g., Enwonwu v. Chertoff, 376 F. Supp. 2d 42, 79, 83 (D. Mass. 2005) (stating that IIRIRA and other statutes have led to an "erosion of the very rights a truly independent judiciary was designed to protect," and that the REAL ID Act "imposes a chokehold on the free and proper exercise of the writ of habeas corpus") (internal citations and quotations omitted).

[5]Art. I, sec. 9 cl. 2 of the Constitution bars suspension of the "privilege of the Writ of Habeas Corpus" except in certain emergencies.

5

statute, REAL ID Act § 106, as recognized in Xiao Ji Chen v. United States Dep't of Justice, 434 F.3d 144, 154 n.5 (2d Cir. 2006). In response, Congress enacted the REAL ID Act of 2005 eliminating habeas jurisdiction to review most immigration issues. Hiroshi Motomura, Immigration Law and Federal Court Jurisdiction Through the Lens of Habeas Corpus, 91 Cornell L. Rev. 459, 493 (2006). However, to avoid constitutional problems, Congress enacted § 242(a)(2)(D), which authorizes circuit courts hearing appeals from BIA decisions to review "constitutional claims or questions of law" arising in immigration cases notwithstanding language in the INA suggesting otherwise. See Id. at 494.

Although Congress has stripped district courts of habeas jurisdiction to consider most immigration issues, district courts retain jurisdiction to review detention unrelated to a removal proceeding, and therefore not subject to circuit court review under INA § 242. Gordon, Mailman & Yale-Loehr, supra, at § 104.04[3][d][iv] (citing 151 Cong. Rec. H2813, H2873 (daily ed. May 3, 2005)); see also Motomura, supra, at 487. For example, a district court has jurisdiction to review the indefinite detention of an alien after removal proceedings have ended. Clark v. Martinez, 543 U.S. 371, 379 (2005); Zadvydas v. Davis, 533 U.S. 678, 699 (2001). A district court also has jurisdiction to review an alien's detention when the government has unreasonably delayed initiating removal, see Denmore v. Kim, 538 U.S. 510, 528-29 (2003), or when the government has punitively detained an alien independent of removal, Wong Wing v. United States, 163 U.S. 228, 237 (1896).

### 4. Authority to Grant Bail

DHS officers may "parole" aliens contesting removal "for urgent humanitarian reasons or significant public benefit." INA § 212(d)(5); 8 C.F.R. § 212.5. An alien paroled under § 212(d)(5) may leave a detention center and physically enter the United States;

however, from a legal standpoint, he is deemed not to have entered the country. Id. Generally, where an alien is paroled, DHS sets a bond to ensure that the alien will appear in the removal proceeding. C.F.R. § 212.5(d)(1). Neither an IJ nor a district court may review a DHS officer's decision to deny parole. See 8 C.F.R. § 1003.19(h)(I)(i)(B) and INA § 242(a)(2)(B). However, as stated, under § 242(a)(2)(D) a circuit court may ultimately review a decision denying parole if the decision raises a constitutional or legal issue.

**B.    Application of Principles**

Turning to the present case, the foregoing principles make clear that even if petitioner's claim is meritorious, Congress has taken it out of my hands. Petitioner argues that the government violated 22 C.F.R. § 41.122(a) by revoking his visa because of a political dispute in the Philippines and that it is therefore detaining him without due process. However, I cannot address this argument because I lack subject matter jurisdiction over the case. The legality of petitioner's detention depends on the resolution of such issues as whether the government lawfully revoked his visa and whether he is removable from the United States and, as indicated above, I am precluded from reviewing those issues.[6] Further, because the government has initiated removal proceedings and such proceedings are ongoing, the present case is not within the narrow category of cases over which district courts have jurisdiction. See, e.g., Clark, 543 U.S. 371.

---

[6]Had Congress not enacted § 242(a)(2)(D) authorizing circuit courts to address legal issues arising out of immigration proceedings, I would likely have had to determine whether § 221(i), as applied to an inadmissible alien detained in the United States, violated the suspension clause. See St. Cyr, 533 U.S. at 305 (stating that a suspension clause issue would arise if Congress deprived federal courts of habeas jurisdiction and "provided no adequate substitute for its exercise"). Indeed, it appears likely that between 2004, when Congress stripped district courts of jurisdiction, and 2005, when it enacted § 242(a)(2)(D), § 221(i) did suspend the writ.

In addition, I may not review DHS's refusal to parole petitioner. § 242(a)(2)(B); § 242(a)(2)(D); § 242(a)(5); see also Kim, 538 U.S. at 529 (holding that detention pending removal is constitutionally permissible). Further, because I lack jurisdiction to grant a writ, I have no inherent power to grant bail as a means of making the habeas remedy effective. See Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001).

### III. CONCLUSION

Therefore,

**IT IS ORDERED THAT** Jocelyn Isada Bolante's petition for a writ of habeas corpus is **DISMISSED** for lack of subject matter jurisdiction.

Dated at Milwaukee, Wisconsin this 18 day of October.

/s_____
LYNN ADELMAN
District Judge